## Star Coach Race Tours, LLC
## Lease Agreement

THIS LEASE AGREEMENT ("Lease") is dated this 17th day of August, 2022 ("Effective Date") between <u>JAL AND JLL LLC</u>, whose address is 124 West Pine Street, Missoula, Montana 59802, hereinafter called the OWNER, and <u>Star Coach Race Tours, LLC,</u> whose address is 5623 Carrington Drive, White Marsh, Maryland 21162, hereinafter called the LESSEE.

1. <u>PROPERTY COVERED AND TERM:</u>

    A. OWNER does hereby Lease to LESSEE and LESSEE Leases from OWNER the Vehicle(s) described in "Schedule A" attached hereto and made a part hereof ("(Vehicle"). The Lease Agreement shall become effective with respect to each Vehicle on the "delivery date" for that specific vehicle as set forth in "Schedule A", and shall continue with respect to each said Vehicle until terminated as hereinafter provided.

    B. The initial term of this Lease shall commence on the Effective Date and be effective for a two (2) year initial term. Upon expiration of the initial term of the Lease, this Lease shall automatically be renewed for up to four (4) additional two (2) year renewal terms, unless terminated by either party with sixty (60) days written notice prior to the end of the initial term or any of the two (2) year renewal terms.

    C. It is expressly understood and agreed that this is a contract of leasing ONLY and that LESSEE has by these presents acquired no right, title, or interest in or to the Vehicles.

2. <u>PAYMENT:</u>

    A. To Lease the Vehicle(s), LESSEE agrees to pay OWNER (a) for those vehicles listed under the title "Annual Lease Vehicles", all rental and other charges provided herein on the first (1st) day of each month of the term in the amount of $40,000 per month and (b) for those vehicles listed under the title "As Needed Vehicles", all rental and other charges provided herein as mutually agreed in writing. Rental and other charges shall be payable without prior notice or demand, without offset or deduction. In the event that any rental and other charges payable under this Lease is not received by Lessor within five (5) business days of the date it is due, Lessee shall pay to OWNER a late fee of three percent (3%) per month. Payments shall be mailed to:

JAL AND JLL LLC
4010 Albritton Road
St. Cloud, Florida 34772

3. <u>LESSEE OBLIGATIONS.</u>

    A. LESSEE, at its own expense, shall furnish all maintenance and repairs required to keep the Leased vehicle(s) in good operating condition, including but not limited to, oil and oil change, lubrication, replacement parts, required inspections, antifreeze and washing. LESSEE, at its own expense, shall maintain and, when necessary, replace tires on the vehicle(s). Any replacement tires shall become the property of OWNER immediately upon their attachment to the vehicle(s). Upon termination or cancellation, LESSEE shall return each Leased vehicle to OWNER with tires having no less than 50% tread and brakes having no less than 50% lining. Additional guidelines for Leased Vehicles are set forth in Schedule B

    B. LESSEE shall not (except as required by Section 3 hereof) make any substantial changes in or improvement to the Leased vehicle(s) without the advance written consent of the OWNER. Any improvements or additions applied to the vehicle(s) shall at once become and remain the property of the OWNER, at no cost to OWNER. LESSEE shall notify OWNER promptly of any major repairs that appear necessary and LESSEE shall proceed, at its own cost, in accordance with OWNER'S instructions pertaining to such major repairs.

<span style="color:red">Ex D- Bus Lease</span>

    C.    LESSEE shall, at all times, be responsible for all damages to the Leased vehicle(s).

    D.    If, in the reasonable opinion of OWNER, LESSEE shall fail to perform any of the repairs, maintenance or replacements required by the foregoing subparagraphs, OWNER may (without prejudice to any of its rights or remedies under this Lease Agreement) give LESSEE written notice to perform such repairs, maintenance or replacements and should LESSEE fail, within ten days from the date of such notice, to comply with the requirements therein set forth, OWNER may cause such Leased vehicle(s) to be restored to the required good working order and condition. LESSEE hereby agrees promptly to reimburse OWNER for all expense incurred by OWNER under this subparagraph E.

4.    <u>LIABILITY INSURANCE:</u>

    A.    LESSEE, at its cost, shall maintain at all times standard public liability and property damage insurance (hereafter "Liability Insurance") on the Vehicles, written by a company satisfactory to OWNER, covering both OWNER and LESSEE as insured for the ownership, maintenance, use and operation of the Vehicles, in the following limits: Bodily Injury and Property Damage, $5,000,000.00 Combined Single Limit. Such policy shall provide that coverage cannot be cancelled or materially altered without thirty (30) days prior written notice to OWNER. The LESSEE shall furnish to the OWNER, prior to delivery of a Vehicle to LESSEE, certificates to evidence compliance with this subparagraph (A), and certificates evidencing renewal at least ten (10) days prior to an expiration date.

    B.    If LESSEE fails to procure and maintain liability insurance, or fails to furnish OWNER the required evidence of insurance, OWNER, without prejudice to any other remedy it may have, is authorized, but not obligated, to procure such liability insurance, and LESSEE shall pay OWNER, as additional rental, the amount of all premiums paid by OWNER.

    C.    To the extent not covered by insurance, LESSEE hereby releases OWNER from, and will indemnify, defend and hold OWNER harmless from and against, any claims or causes of action for death or injury to persons or loss of or damage to property arising out of or caused by the ownership, maintenance, use, or operation of any Vehicle.

    D.    LESSEE hereby releases, and will indemnify, defend and hold OWNER harmless, from all claims for death or injury to LESSEE, LESSEE'S employees, drivers, passengers or agents, or for damage to their property, arising out of the ownership, maintenance, use or operation of any Vehicle.

    E.    OWNER does not, by reason of being named as an additional insured under public liability and property damage insurance obtained by LESSEE, incur any liability or responsibility for or assume any dominion or control over the use and operation of Vehicles.

5.    <u>PHYSICAL DAMAGE INSURANCE:</u>

The LESSEE shall pay for loss or damage to any Vehicle subject to the following:

    A.    LESSEE will pay OWNER for all loss or damage to any Vehicle, including damages from collision or upset, fire, theft, lightning, windstorm, hail earthquake or explosion, and related expenses arising from any cause.

    B.    In the event of the total loss or theft of a Vehicle, LESSEE shall pay to OWNER the depreciated value of the Vehicle plus the unamortized portion of any licenses and/or taxes attributable to such Vehicle. In any event LESSEE shall continue to pay OWNER the fixed weekly/monthly charge until such time as OWNER receives payment for the lost or damaged vehicle.

    C.    LESSEE agrees to reimburse OWNER for any and all damages sustained by reason of the operation of the Vehicles, during periods of strike, riot or civil commotion, if such damage is not caused by employees of OWNER. LESSEE agrees that its employees, agents and servants will render all possible cooperation to assist OWNER in safeguarding the Vehicles and, at OWNER'S option, in collecting such damages from third parties.

<span style="color:red">Ex D- Bus Lease</span>

    D.   LESSEE agrees to reimburse OWNER in full for all damages resulting from the loss of tools, extinguishers, and other equipment on the Vehicle furnished by OWNER.

6.   <u>NOTICE OF ACCIDENT:</u>

LESSEE agrees to notify OWNER immediately upon the happening of any accident, theft or other occurrence resulting in damage to or otherwise involving the use of a Vehicle by the speediest means of communication available and to cause the driver to make a detailed report in person at OWNER'S office as soon as practicable and to render all other assistance to OWNER and the insurer that is requested by either of them in investigation, defense or prosecution of claims or suits.

7.   <u>ADDITIONAL PROVISIONS.</u>

    A.   Taxes, licenses, and permits shall be filed for and paid by the party so designated on "Schedule A." Any taxes, licenses or permits not specifically provided for on "Schedule A" shall be filed and paid for by LESSEE.

    B.   Motor fuel tax returns will be prepared by LESSEE from its own records and those furnished by OWNER, unless designated otherwise on "Schedule A." IF prepared by OWNER, LESSEE will provide OWNER with all trip records, fuel tickets or invoices, and other records or documents relating to the use of the Leased vehicle(s) as may be necessary for the preparation of the fuel tax returns. All taxes due will be paid by LESSEE. LESSEE will bear the responsibility for any additional charge, assessment, tax, penalty, or loss of credit as a result of untimely or improper furnishing of such documents or information by the LESSEE.

    C.   LESSEE assumes and agrees to pay when due all taxes and governmental charges not specified above made or assessed upon or with respect to the Leased vehicle(s) including, but not limited to, fines, tolls, property taxes, license, excise, use or sales taxes, vehicle or motor carrier fees or taxes, and fees or taxes on account of or measured by the rentals payable hereunder, together with any interest or penalty charges related to any of the foregoing. Should OWNER be required itself to pay any taxes or charges of the nature above referred to, OWNER shall invoice LESSEE in such amount which LESSEE shall pay forthwith. In event of LESSEE'S failure to pay promptly such invoice, OWNER may exercise the same remedies as are provided for default in payment of rent under this Lease Agreement.

    D.   That the OWNER shall incur no liability to the LESSEE for failure to supply any vehicle, other item or service required by the terms of this Lease Agreement if prevented by war, riots, fires, labor disputes, accidents or other causes beyond its control.

    E.   That the acceptance of a vehicle in service constitutes an acknowledgement that the Vehicle complies with LESSEE'S specifications; any structural alteration, special equipment, repainting or material alteration in painting, lettering or art work thereafter required by LESSEE shall be made at LESSEE'S expense. If subsequent to the date of execution of the Lease by OWNER any federal, state, or local law, ordinance, or regulation shall require the installation of any additional equipment, specifically including but not limited to anti-pollution or safety devices, OWNER will either install such items or arrange for their installation, and LESSEE agrees to pay OWNER the full cost thereof upon receipt of OWNER'S invoice.

    F.   This Lease Agreement shall be binding on the parties hereto, their successors, legal representatives and assigns. LESSEE shall promptly notify OWNER in writing prior to all substantial changes in ownership or any material disposition of the assets of LESSEE'S business. LESSEE shall not have the right to sub-Lease the vehicle(s) Leased hereunder nor to assign this Lease Agreement or any interest therein without the prior written consent of OWNER.

    G.   This Lease Agreement contains the entire agreement and understanding between the parties, and its terms shall not be construed as altered by any verbal agreement or informal writing nor by failure to insist upon performance or failure to exercise any right or privilege, but alteration or addition shall be accomplished only by written endorsement or amendment hereto duly executed by both parties.

Ex D- Bus Lease

    H.   Any notice required or permitted by this Lease Agreement shall be sent certified mail addressed to OWNER and LESSEE at the addresses set forth below or at such addresses as may hereafter be specified by written notice given in accordance herewith:

| | |
|---|---|
| OWNER: | JAL AND JLL LLC |
| | 124 West Pine Street |
| | Missoula, Montana 59802 |
| LESSEE: | Kenneth Krupp |
| | STAR COACH RACE TOURS, LLC |
| | 5623 Carrington Drive |
| | White Marsh, Maryland 21162 |

    J.   LESSEE shall be liable to OWNER for all costs and expenses including reasonable attorney's fees incurred in collecting payments due or to become due from LESSEE or in enforcing any rights of OWNER pursuant to this Lease Agreement.

    K.   This Lease is declared to be a Florida contract, and all of its terms shall be construed according to the laws of the State of Florida. The parties further agree that they will submit to the jurisdiction of the General District Court or the Circuit Court of Osceola County, Florida to resolve any disputes or disagreements arising from this Agreement.

    L.   COMPLIANCE WITH LAWS. Lessee shall comply with all laws, orders, rules, regulations, ordinances and other public requirements, including, but not limited to, local, state and federal transportation statutes, rules and regulations, applicable to its work and shall defend, indemnify, and hold harmless OWNER, its affiliated entities, their officers, directors, shareholders, members, partners, agents, representatives and employees and their respective heirs, successors and assigns from and against any and all claims, demands, obligations, causes of action and lawsuits and all liabilities, fines, judgments, penalties, costs, expenses (including the payment of attorneys' fees and disbursements) and damages resulting from Lessee's failure to so comply.

    M. Security. Owner may, at any time, with or without notice to Lessee, sell, transfer, assign, mortgage and grant a security interest in this Lease, any Schedule, including any **Schedule A-**Individual Leasing Record, and the Vehicle or any Item of Vehicle, in whole or in part, and in such event any such purchaser, transferee, assignee or secured party shall have and may exercise all of Owner's rights hereunder, including the right to receive Overall Lease Payments, solely with respect to the Item or Items of Vehicle (and Schedules, including **Schedule A-**Individual Leasing Records) to which such sale, transfer, assignment, mortgage and grant of security interest related. Any of Owner's assigns may re-assign such rights and may mortgage and grant a security interest in any such items of Vehicle. Notwithstanding the foregoing, in the event that Owner leases the Vehicle from a third party under a Master Lease and subleases the Vehicle to Lessee, Lessee's rights in and to the Vehicle shall be subject and subordinate to the interest and rights, including the rights of possession, of any third party Owner under the Master Lease. Lessee agrees that upon written notice to Lessee of any such sale, transfer, assignment, mortgage, or security interest, Lessee shall accept and comply with the directions and demands of Owner's assigns.

    N. Inspection.  Throughout the duration of this Lease, Owner or Owner's authorized agent has the right to inspect the Vehicle at any reasonable time or place and Lessee agrees to return the Vehicle. A formal DOT inspection may be requested, at the expense of Lessee, to ensure Vehicle is DOT compliant.

Ex D- Bus Lease

O. DISCLAIMER OF WARRANTIES. OWNER, NOT BEING THE MANUFACTURER OR THE VENDOR OF THE VEHICLE, HEREBY MAKES NO EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY OF ANY KIND OR AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE DESIGN OR CONDITION OF THE VEHICLE, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PURPOSE, OR ITS CAPACITY OR DURABILITY, OR THE QUALITY OF THE MATERIAL OR WORKMANSHIP OR CONFORMITY OF THE VEHICLE TO THE PROVISIONS AND SPECIFICATIONS OF ANY PURCHASE ORDER RELATING THERETO, OR ANY PATENT INFRINGEMENT OR PATENT OR LATENT DEFECTS, AND LESSEE HEREBY ACKNOWLEDGES THE FOREGOING DISCLAIMER BY OWNER.

8.  CANCELLATION AND TERMINATION:

   A.  Upon expiration or termination of the Lease Agreement, LESSEE shall, promptly (1) return the Leased vehicle(s) to the OWNER road worthy, complete, and in good order and condition, reasonable wear and tear alone excepted, and (2) pay all transportation charges to OWNER'S requested locations for Vehicle return, and (3) pay the cost to remove any decals and/or artwork from the vehicle(s). Should the Leased vehicle(s) so returned not be in the required good order and condition, OWNER shall serve written notice on LESSEE to make the required repairs, and in the event LESSEE fails to do so within 15 days after such notice, OWNER may at its option cause such repairs to be made, in which event LESSEE agrees promptly to reimburse OWNER for all expense so incurred by OWNER.

   B.  Time is of the essence for this Lease Agreement and, in the event LESSEE breaches or is in default of any of its provisions, OWNER may immediately, without formal notice or demand, take possession of, retain and/or refuse to re-deliver the Leased vehicle(s) to LESSEE until such breach or default is cured without any of such actions being deemed an act of cancellation and without prejudice to other remedies OWNER may have, and LESSEE shall continue to be liable for rent and other charges accruing during the period the Leased vehicle(s) are retained by OWNER. If LESSEE'S breach or default shall continue for seven (7) days after written notice thereof shall have been mailed to LESSEE, OWNER may, at its election and irrespective of whether OWNER shall have elected to take possession of or retain the Leased vehicle(s) as provided above, terminate this Lease Agreement immediately.

   C.  This Agreement shall terminate automatically at the election of OWNER and without notice to LESSEE if LESSEE shall (1) become insolvent, or (2) file a voluntary petition in bankruptcy, or (3) make an assignment for the benefit of creditors, or (4) be adjudicated a bankrupt, or (5) if a receiver be appointed for LESSEE'S business, or (6) make a material liquidation of assets.

   IN WITNESS WHEREOF, OWNER and LESSEE have caused this Lease to be executed by its properly authorized officer(s), and witnessed, as of the day and year first above written.

Star Coach Race Tours LLC **("LESSEE")**                    JAL & JLL, LLC **("OWNER")**

By: _[DocuSigned by: signature, 34A4BB3719F1426...]_         By: _[DocuSigned by: signature, BEFF91B29F794D6...]_

Name: Kenneth Krupp                                          Name: Joel Labute

Title: Manager                                               Title: Manager

Ex D- Bus Lease

## SCHEDULE A

1. <u>Annual Lease Vehicles</u>. LESSOR will ensure the Vehicles listed below are available every week of the year:
    a. Luxury Entertainer Coach 3
    b. Luxury Hospitality Coach 1
    c. Luxury Star Coach 2
    d. Luxury Star Coach 3
    e. Luxury Star Coach 4
    f. Luxury Star Coach 7
    g. Luxury Star Coach 8
    h. Luxury Star Coach 9

2. <u>As Needed Lease Vehicles</u>. The following Vehicles will be leased, as needed, on a weekly basis on a mutually agreed rate at market rates as as all agreed in writing:
    a. Luxury Executive 2
    b. Luxury Executive 3
    c. Luxury Executive 4
    d. Luxury Executive 5
    e. Luxury Star Coach 1
    f. Luxury Motor Home 3
    g. Luxury Motor Home 4

---

| | |
|---|---|
| . Amount Allowed for License/Registration | LESSEE To Pay |
| . Amount Allowed for Personal Property Tax | LESSEE To Pay |
| . Amount Allowed for Permits | N/A |
| . Amount Allowed for City/County License | LESSEE To Pay |

Star Coach Race Tours LLC **("LESSEE")**                    JAL & JLL, LLC **("OWNER")**

By: _[signature]_____        By: _[signature]_____

Name: Kenneth Krupp                                              Name: Joel Labute
Title: Manager                                                          Title: Manager

6

<span style="color:red">Ex D- Bus Lease</span>

**SCHEDULE B**

**MINIMUM GUIDELINES FOR CONDITION OF VEHICLE**

1. **TIRES:** Shall have a minimum of ten thirty-seconds (10/32) of an inch tread on all tires, shall have sound re- capable casings, shall be matched in tread pattern (all grip tread or regular tread) across the axle, and shall be the same size. Wear beyond 10/32 of an inch will be charged on a pro-rated basis. Tires may be Michelin, Bridgestone or Goodyear, new or used original, but with at least 10/32 of an inch of tread remaining. Tires casings should be free of bulges, cuts and gouges.

2. **BODY:** Shall be free of leaks and shall have no dented, missing or punctured panels, including but not limited to the paint, bumper, fairings, grill, etc. Fuel tanks may have small dents but may not leak.

3. **INTERIORS:** Shall be clean, shall have original radio and other original equipment to be in place. Gauges and all other operative parts and accessories shall be in working order. Dash panels and interior trim pieces must not be missing and should be free from holes, cracks and breaks larger than a standard credit card. Mattresses shall be new and will be either foam or spring.

4. **ENGINES:** Shall be mechanically sound with no cracked heads or blocks. Transmission and differentials shall have no seal leakage (including wheel seals - steer and drive axles), shall meet specifications as defined by the original equipment manufacturer. All emission components must function properly and pass industry test and inspection.

5. **DRIVE TRAIN COMPONENTS:** Shall perform to eighty percent (80%) of rated horsepower and not have any oil leaks. Clutch and transmission must be roadworthy and free from defects with no visible bends, cracks or leaks. Clutch and clutch brake must be in adjustment.

6. **GLASS:** Windshield shall not be pitted, chipped or cracked that would fail DOT (as defined below) inspection. Windows and mirrors shall not be broken or cracked and all windows operating mechanisms will be operable.

7. **ELECTRICAL:** Batteries, starters, alternators, etc. shall be operable. Batteries that are jumped and hold a charge for at least 2 hours will not be replaced. Lights and wiring shall be operable with no broken sealed beams, lenses, etc. Heaters and air conditioning systems shall be operable.

8. **FACTORY EQUIPMENT & IN-SERVICE EQUIPMENT:** Factory installed equipment and any equipment installed in unit prior to lease shall be intact and operable. Includes, but not limited to fifth wheel, mud flaps, airfoils, safety equipment, chain boxes, spare tire racks, load lock holders, etc.

9. **CHROME & BRIGHT METAL TRIM:** Bumpers, grab handles, wheel hub caps, grills, etc. originally on unit at time of lease shall be free from major damage.

10. **BRAKES AND SHOCKS:** Shoes shall have a (10/32 front and 14/32 rear) wear left. Wear beyond that point shall be charged on a prorated basis. Shocks must not be leaking at the bottom.

11. **KEYS:** Vehicle shall have at least one (1) key; original or working duplicate.

12. **FLUIDS AND FILTERS:** All fluid levels shall be filled at manufacturer recommended maximum levels, **excluding** diesel fuel and diesel exhaust fluid (DEF), if applicable. All fluids must contain proper cap as required per manufacturer standards. There shall be no heavy fluid leaks defined as fluid leaking on the ground. Forming droplets or light accumulation of moisture/dampness is acceptable. Filters must function properly and pass DOT inspection. Lessee shall use oil and fuel stations as directed by Owner in its sole discretion.

13. **DOT STANDARDS:** Shall meet all safety and inspection standards set by the U.S. Department of Transportation ("DOT") and shall pass a complete DOT inspection. Owner is required by DOT keep and maintain all Vehicle maintenance files. Lessee is required by DOT regulations to attach identifiable markings on Lessee's Vehicle. Identifiable markings include Vehicle VIN number, Carrier's

Ex D- Bus Lease

DocuSign Envelope ID: E6FFA262-3985-4CB4-8681-B0E011CB7019

US DOT numbers, Owner's company name and location, and Vehicle identification number. Lessee may keep any and all personal logos displayed on Vehicle provided they do not interfere with Owner's required markings.

14  **OWNER'S MANUAL:** Vehicles sold as new will have an owner's manual; manuals for used equipment can be purchased from the respective dealer, at LESSEE's expense.

Ex D- Bus Lease