# PROMISSORY NOTE

THIS NOTE IS ISSUED UNDER THE TERMS OF THE MEMBERSHIP INTEREST PURCHASE AGREEMENT DATED WITH AN EVEN DATE HEREOF AMONG BORROWER, THE LENDER AND OTHER PARTIES THERETO (THE "PURCHASE AGREEMENT") AND THE TERMS OF SUCH PURCHASE AGREEMENT ARE INCORPORATED HEREIN.

**August 17, 2022**                                                                                                        $800,000.00

 **FOR VALUE RECEIVED**, **Kenneth Krupp**, a resident of the State of Illinois ("**Buyer**" and "**Borrower**"), for value received, jointly and severally, hereby promise to pay to the order of **Joel Labute**, a resident of the State of Florida (collectively the "**Lender**"), at such place as Lender may designate in writing, the principal sum of Eight Hundred Thousand and No/100 Dollars ($800,000.00) (the "**Principal Amount**"), plus all accrued interest thereon until paid in full, in lawful money of the United States, in accordance with terms of this Promissory Note (the "**Note**") and that certain Personal Guaranty by and between Ken Krupp and Lender, dated as of the date hereof, as set forth in Exhibit A (the "**Personal Guaranty**"). This Note is issued pursuant to the provisions of that certain Interest Purchase Agreement with an even date herewith (the "**Purchase Agreement**") and related documents, by and between Buyer, and the Lender as Seller, whereby Buyer purchased the interest of Star Coach Race Tours LLC (as defined in the Purchase Agreement) as more particularly described in the Purchase Agreement. In consideration of the mutual covenants and agreements contained in this Note and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender hereby agree as follows:

1.      **Repayment**. **Repayment**. Subject to the terms and conditions of this Note, the principal and interest due under this note Note shall be amortized over a ten year period and payable (a) first, in equal monthly interest only payments on the first day of each of the twelve (12) months following the date of this Note ("**Interest Only Period**"), (b) in equal monthly principal and interest payment on the first day of each of the twenty four (24) months following the Interest Only Period, based on a one hundred twenty (120) month amortization ("**Initial P&I Period**"), (c) with the the Borrower having the option, to be exercised by thirty (30) days advance written notice prior to the end of the Initial P&I Period, to extend the payment terms for an additional thirty six (36) months so that all outstanding principal and interest is paid in equal monthly principal and interest payment on the first day of each of the thirty six (36) months following the Initial P&I Period, based on a one hundred twenty (120) month amortization ("**Second P&I Period**"), and (d) with the the Borrower having the option, to be exercised by thirty (30) days advance written notice prior to the end of the Second P&I Period, to extend the payment terms for an additional forty eight (48) months, so that all outstanding principal and interest is paid in equal monthly principal and interest payment on the first day of each of the following the Second P&I Period ("**Third P&I Period**"), all in accordance with the Amortization Schedule set forth on Exhibit B, so that following Initial P&I Period or Second P&I Period, as applicable, if the Borrower does not give notice to extend the payment date, or at the end of the Third P&I Period all outstanding principal and interest under this Note shall be due and payable ("**Maturity Date**"). Notwithstanding the foregoing, the Borrower must receive written approval from the lending institution of any other outstanding loans of Borrower prior to electing not to extend the payoff of the Note for the Second P&I Period or the Third P&I Period or prepay the Note in full prior to the Maturity Date.

2.      **Subordination to Senior Indebtedness**. Borrower, for itself, its successors and assigns, covenants and agrees, and Lender by acceptance hereof, likewise covenants and agrees, that the payment of the principal of and interest under this Note is hereby expressly subordinated to that certain Promissory Note in the amount of $3,875,000.00 by and between Borrower and IncredibleBank ("Bank") dated as of the date herewith and all documents related thereto (the "Senior Indebtedness"), and that such subordination is for the benefit of the holders of the Senior Indebtedness.

3.      **Interest and Payments**. The Company promises to pay interest on the outstanding principal amount hereof from the date hereof until payment in full, which interest shall be payable at the rate of eight percent (8.00%) per

annum, compounded monthly. Interest shall be calculated on the basis of a 365-day year for the actual number of days elapsed.

4.  **Application Of Payments**. Notwithstanding anything else set forth in this Note, all payments hereunder shall be applied as follows: (i) first, to the payment of accrued but unpaid interest, if any on the outstanding principal balance; (ii) next, to payment of the outstanding principal balance; and the remainder, if any, to the reduction of outstanding principal.

5.  **Prepayment**. The total amount of principal and all interest that would be due before the Maturity Date evidenced by this Note may be prepaid in whole or in part at any time without penalty or premium, otherwise this Note may not be prepaid in whole or in part at any time without penalty or premium. Notwithstanding the foregoing, the Borrower must receive written approval from the lending institution of any other outstanding loans of Borrower prior to prepaying the Note in full prior to the Maturity Date.

6.  **Default.** The term "Default," as used herein, means the occurrence of any one or more of the following events:

    (a)   if Borrower fail to pay when due any of the payments due under this Note and such failure continues for sixty (60) days after written notice of default (email being sufficient); or

    (b)   if Borrower shall fail to observe or perform any obligation, covenant or agreement contained or incorporated by reference in this Note (other than that covered by clause (a) above) after the earlier of (i) the first day on which Borrower has knowledge of such failure; or (ii) written notice thereof (with email being sufficient, provided Lender has received confirmation of Lender's receipt) has been given to Borrower by Lender; or

    (c)   if Borrower or the Guarantor, or any of them, shall commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to it or any of its respective debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of any of its property, or any substantial part of its property, or shall consent to any such relief or to the appointment of or taking possession by any such official in an involuntary case or other proceeding commenced against it, or shall make a general assignment for the benefit of creditors, or shall fail generally, or shall admit in writing any of its inability to pay any of its debts as they become due, or shall take any other action to authorize any of the foregoing; or

    (d)   An involuntary case or other proceeding shall be commenced against Borrower or the Guarantor, or any of them, seeking liquidation, reorganization or other relief with respect to any of its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of any of its property, or any substantial part of its property, and such involuntary case or other proceeding shall remain undismissed and unstayed for a period of sixty (60) days; or an order for relief shall be entered against Borrower or the Guarantor, or any of them, under the federal bankruptcy laws as now or hereafter in effect; or

    (e)   Borrower shall be in default of the any other loan beyond any applicable notice and cure period provided with respect to such loan; or

    (f)   Breach by or failure of the Borrower to comply with any term, obligation, covenant, or condition contained in the Purchase Agreement, the Guaranty, or any other agreement or instrument entered into by and between Borrower and Lender that is not cured within the notice and cure period provided in such agreements

Upon the occurrence of a Default, this Note may be accelerated and the unpaid balance of the Principal Amount then outstanding together with interest accrued and unpaid thereon are declared to be immediately due and payable at the option of the Lender or other holder of this Note.

7.    **Remedies**.

(a)    If a Default occurs under this Note, Lender may, at its option, (i) by written notice to Borrower, declare the entire unpaid principal balance of this Note, together with all accrued interest thereon and all applicable fees, immediately due and payable regardless of any prior forbearance, (ii) a default interest rate of eighteen percent (18%) shall apply to all outstanding amounts (ii) exercise any and all rights and remedies available to it under applicable law, including, without limitation, the right to collect from Borrower all sums due under this note.

(b)    The rights and remedies of the Lender as provided in this note shall be cumulative and may be pursued singly, successively, or together against property described in the Purchase Agreement, or any other funds, property or security held by the Lender for payment or security, in the sole discretion of the Lender. The failure to exercise any such right or remedy shall not be a waiver or release of such rights or remedies or the right to exercise any of them at another time.

8.    **Acceleration**.  Upon the occurrence of a Triggering Event (as defined below), the Lender shall be entitled to exercise its rights and remedies as set forth in this Note, including without limitation Lender's right to declare the entire unpaid principal and interest balance of this Note, together with all accrued and unpaid interest, immediately due and payable.  For purposes of this Note, a "**Triggering Event**" shall include any of the following:  (1) a sale, lease, exchange, transfer, exclusive license or other disposition (including, without limitation, by merger, consolidation, or otherwise) of all or substantially all of the assets or intellectual property of the Borrower to an individual, partnership, corporation, business trust, joint stock company, trust, unincorporated association, joint venture, limited liability company or any other entity of whatever nature or group (within the meaning of Section 13(d)(3) or 14(d)(2) of the Securities and Exchange Act);  or (2) any merger, consolidation or other business combination or a recapitalization or refinancing of either of the Borrower resulting in the holders of the issued and outstanding ownership interest of either of the Borrower immediately prior to such transactions owning or controlling less than fifty percent (50%) of the voting power of the continuing or surviving entity immediately following such transaction.

9.    **Assignment**.  The Borrower agree not to assign any of Borrower' rights, remedies or obligations described in this Note without the prior written consent of the Lender, which consent may be withheld in its sole discretion. Subject to the restrictions on transfer above, the rights, interests and obligations under the Note shall be binding upon and benefit the successors, assigns, heirs, administrators and transferees of the parties hereto.

10.    **Waiver of Demand and Collection**.  The Borrower hereby waive demand, presentment, notice of nonpayment, protest, notice of protest, and all other notice of diligence in collecting this Note or notice of suit.

11.    **Modification**.  The modification or waiver of any of the Borrower' obligations or the Lender's rights under this Note must be contained in a writing signed by the Lender and the Borrower.

12.    **Entire Agreement**.  The Borrower agrees that there are no conditions or understandings which are not expressed in this Note or the Personal Guaranty and this Note and the Personal Guaranty constitute the entire agreement and understanding between parties concerning the subject matter hereof, and cancels, terminates and supersedes all prior written and oral understandings, agreements, proposals, promises and representations of the parties respecting any and all subject matter contained herein.

Exhibit F- 800K Note

13. **Severability**. If any provision of this Note is held to be invalid by a court of competent jurisdiction in a final order, the invalid provision will be deemed severed from this Note and shall not affect any part of the remainder of the provisions of this Note.

14. **Notices**. All notices and other communications given to or made upon any party hereto in connection with this Note shall be in writing (including telexed, telecopied or telegraphic communication) and mailed (by certified or registered mail), telexed, telegraphed, telecopied or delivered to the respective parties, at the address as set forth in the Purchase Agreement or in accordance with any subsequent written direction from either party to the other. All such notices and other communications shall, except as otherwise expressly herein provided, be effective when received; or in the case of delivery by messenger or overnight delivery service, when left at the appropriate address.

15. **Attorney's Fees**. In the Event of Default, Lender shall be entitled to be paid by Borrower its reasonable attorney's fees and expenses incurred in connection with the collection of amounts due hereunder which fees and expenses shall be added to the indebtedness hereunder and accrue interest at the applicable rate stated hereunder.

16. **Governing Law**. This Note shall be governed by and construed and enforced in accordance with the statutes and laws of the State of Montana, without reference to the principles of conflict of laws. Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.

17. **Jurisdiction and Venue**. Any suit involving any dispute or matter arising under this Note may only be brought in the federal or courts located in Montana. Borrower hereby consents to the exercise of personal jurisdiction by any such courts with respect to any such proceeding.

18. **Waiver Of Jury Trial.** The Borrower irrevocably waive any and all rights the Borrower may have to a trial by jury in any action, proceeding or claim of any nature relating to this note, any documents executed in connection with this Note or any transaction contemplated in any of such documents. The Borrower acknowledge that the foregoing waiver is knowing and voluntary.

[*Signature page to follow.*]

**IN WITNESS WHEREOF**, Borrower has caused its duly authorized officer to execute and seal this Note as of the day and year first above written.

**BORROWER**


Kenneth Krupp

By: _[DocuSigned by: 34A4BB3719F1426...]_ _____

Name: Kenneth Krupp

Exhibit A

Personal Guaranty

(As Attached)

Case 9:24-cv-00038-DWM Document 1-6 Filed 03/26/24 Page 6 of 14

# PERSONAL GUARANTY

**THIS PERSONAL GUARANTY ("Guaranty")** is dated this 17th day of August 2022.

From: Kenneth Krupp (the "Guarantor")

To: Joel Labute, a resident of the State of Florida (the "Lender")

Re: The obligations of:
(a) **Star Coach Race Tours LLC**, a Maryland limited liability company ("**Company**") and **BWS ALK LLC**, a Montana limited liability company ("**Buyer**" and with the Company the "**Borrowers**"), to jointly and severally make payments to the Lender (the "MIPA Obligations") under that certain Membership Interest Purchase Agreements, dated as of the date set forth above, among the Lender, the Borrowers (as defined in the Notes) and others (the "MIPA"), the Secured Promissory Notes for $800,000 in principal and the Secured Promissory Notes for $130,000 in principal referenced thereunder, dated as of the date set forth above (the "MIPA Notes"); and
(b) Borrowers to make payments to the Lender (the "APA Obligations" and together with the MIPA Obligations the "Obligations") under that certain Asset Purchase Agreements, dated as of the date set forth above, among the Lender, JAL & JLL, LLC, a Montana limited liability company ("the "APA Borrower") and others (the "APA" and with the MIPA collectively the "Purchase Agreements") and the Secured Promissory Notes for $130,000 in principal referenced thereunder, dated as of the date set forth above (the "APA Notes" and collectively with the MIPA Notes, the "Notes").

## Statement of Agreement

**Section 1. Guaranty**. The Guarantor absolutely and unconditionally guarantees the full and prompt payment and performance of all Obligations. Upon an event of default hereunder or under any of the Purchase Agreements or the Notes (an "**Event of Default**"), the Guarantor further agrees to pay all of Lender's expenses incurred in collecting such Obligations, or any part thereof, in preserving or disposing of any collateral securing same, and in enforcing this Guaranty, including reasonable attorney's fees, if after such Event of Default such Obligations, or any part thereof, or this Guaranty, or both, be placed in the hands of an attorney for collection, or if the Lender finds it desirable to secure the services or advice of an attorney with regard to the enforcement of this Guaranty or the collection, preservation or disposition of any collateral. Further, the Guarantor agrees to pay the Lender's expenses, including reasonable attorney's fees, paid or incurred by the Lender in (a) defending any action or proceeding to recover any amount which was recovered from the Lender or (b) defending any and all non-meritorious, as finally determined by a court of competent jurisdiction, or previously-waived, as set forth in this Guaranty, demands, claims, counterclaims, cross-claims, causes of action, litigation and proceedings of every kind and nature, asserted, commenced or instituted against the Lender by the Guarantor on account of, as a result of or relating to any action taken or not taken by the Lender in connection with the Obligations or this Guaranty, provided the Lender is ultimately successful in defending any such proceeding.

**Section 2. Unlimited, Unconditional and Absolute Guaranty**. The liability of the Guarantor under this Guaranty is unlimited in amount and expressly includes interest and all expenses related to collection and enforcement of the Purchase Agreements, the Notes, the Obligations or this Guaranty upon an Event of Default, including, without limitation, those fees set forth in Section 1 of this Guaranty. This is an unconditional guaranty of payment and not of collection and the Lender shall not be required to bring any action against the Borrowers or any other person, or to resort to any collateral or to any balance of any deposit account or credit on the books of the Lender in favor of the Borrowers or any other person, prior to enforcing this Guaranty. The Guarantor acknowledges and agree that the Guarantor's obligations hereunder

shall apply to and continue with respect to any amount paid to the Lender on the Obligations which is subsequently recovered from the Lender for any reason whatsoever (including, without limitation, as a result of any bankruptcy, insolvency or fraudulent conveyance proceeding), notwithstanding the fact that the Obligations may have been previously paid in full or this Guaranty terminated, or both. The liability of the Guarantor shall be absolute and unconditional irrespective of, and the undersigned waives any defense which may otherwise arise as a result of, any of the following: (i) any lack of validity or enforceability of the Notes or any other document, agreement, or writing creating or evidencing any of the obligations owing under the Notes, including, without limitation, the lack of validity or enforceability of all or any portion of any liens securing all or any part of the Notes or (ii) any event or circumstance which might operate under applicable law to discharge the liability of the undersigned or might otherwise constitute or give rise to a defense available to the Borrowers, the undersigned, or any other guarantor of any of the obligations owing under the Notes.

**Section 3. Waivers.** The Guarantor hereby expressly waives: (a) notice of the acceptance of this Guaranty; (b) notice of the existence, creation or increase of all or any of the Obligations of the Borrowers or of any other financial accommodations made by the Lender to the Borrowers from time to time, or of any renewal, amendment, modification or extension thereof; (c) presentment and demand for payment of any of the Obligations; (d) protest and notice of dishonor or default (and all other notices whatsoever) to the Guarantor or to any other person with respect to any of the Obligations; (e) any demand for payment under this Guaranty; (f) the benefit of the homestead exemption and all other exemptions as to this Guaranty; (g) any requirement that the Lender exhaust any right or remedy, or take any action, against the Borrowers, any guarantor, or any other person; (h) any rights of Guarantor under the laws of the State of Montana.

**Section 4. Assignment.** This Guaranty shall be binding upon and inure to the benefit of Lender and Borrowers and the respective successors and assigns of Lender and Borrowers, provided that the Guarantor shall not, without the prior written consent of Lender, assign any rights, duties or obligations hereunder.

**Section 5. Cumulative Rights; No Waiver.** Each and every right granted to the Lender hereunder or under any other document delivered hereunder or in connection herewith, or allowed it by law or equity, shall be cumulative and may be exercised from time to time. No failure on the part of the Lender to exercise, and no delay in exercising, any right shall operate as a waiver thereof, nor shall any single or partial exercise by the Lender of any right preclude any other or future exercise thereof or the exercise of any other right.

**Section 6. Notices.** All notices, requests, demands, claims, and other communications hereunder shall be in writing. Any notice, request, demand, claim, or other communication hereunder shall be deemed duly given if (and then two (2) business days after) it is sent by registered or certified mail, return receipt requested, postage prepaid, and addressed to the intended recipient as set forth in the first paragraph of this Guaranty. Any party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other party notice in the manner herein set forth.

**Section 7. Governing Law; Jurisdiction.** This Guaranty shall be governed by and construed in accordance with the laws of the State of Montana without regard to any principles of choice or conflict of laws to the contrary. If any provision of this Guaranty shall be held invalid by any court of competent jurisdiction, such holding shall not invalidate any other provision hereof. The Guarantor irrevocably submits to the jurisdiction of the state courts of the state of Montana or the United States District Court for Montana, Charlotte Division in any suit, action or proceeding arising out of or relating to this Guaranty. The Guarantor irrevocably waives, to the fullest extent permitted by law, any objection which he may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court

and any claim that any such suit, action or proceeding brought in such a court has been brought in an inconvenient forum.  Process in any action or proceeding referred to in this Section may be served on any Party anywhere in the world.

      **Section 8.  Entire Agreement.**  This writing represents the entire agreement of the parties with regard to the subject matter hereof and is intended as a complete and exclusive statement of the terms of this Guaranty.  All oral discussions and prior agreements with regard to the subject hereof are merged herein. No amendment or modification shall be effective unless made in writing and signed by the Lender.

IN WITNESS WHEREOF, the Guarantor has duly executed this Personal Guaranty under seal as of the day and year first set forth above.


By: _____ (By My Hand and Seal)
     Kenneth Krupp, Individually

Exhibit F- 800K Note

Exhibit B

Amortization Schedule

DocuSign Envelope ID: E200B854-6446-44DE-8226-8BBBF11FD723

Case 9:24-cv-00038-DWM   Document 1-6   Filed 03/26/24   Page 12 of 14

## Amortization Schedule

| Payment Date | Payment Number | Payment | Principal | Interest | Balance |
|---|---|---|---|---|---|
| 9/1/2022 | 1 | ($5,333.33) | $0.00 | ($5,333.33) | $800,000.00 |
| 10/1/2022 | 2 | ($5,333.33) | $0.00 | ($5,333.33) | $800,000.00 |
| 11/1/2022 | 3 | ($5,333.33) | $0.00 | ($5,333.33) | $800,000.00 |
| 12/1/2022 | 4 | ($5,333.33) | $0.00 | ($5,333.33) | $800,000.00 |
| 1/1/2023 | 5 | ($5,333.33) | $0.00 | ($5,333.33) | $800,000.00 |
| 2/1/2023 | 6 | ($5,333.33) | $0.00 | ($5,333.33) | $800,000.00 |
| 3/1/2023 | 7 | ($5,333.33) | $0.00 | ($5,333.33) | $800,000.00 |
| 4/1/2023 | 8 | ($5,333.33) | $0.00 | ($5,333.33) | $800,000.00 |
| 5/1/2023 | 9 | ($5,333.33) | $0.00 | ($5,333.33) | $800,000.00 |
| 6/1/2023 | 10 | ($5,333.33) | $0.00 | ($5,333.33) | $800,000.00 |
| 7/1/2023 | 11 | ($5,333.33) | $0.00 | ($5,333.33) | $800,000.00 |
| 8/1/2023 | 12 | ($5,333.33) | $0.00 | ($5,333.33) | $800,000.00 |
| 9/1/2023 | 13 | ($10,414.97) | ($5,081.64) | ($5,333.33) | $794,918.36 |
| 10/1/2023 | 14 | ($10,414.97) | ($5,115.52) | ($5,299.46) | $789,802.85 |
| 11/1/2023 | 15 | ($10,414.97) | ($5,149.62) | ($5,265.35) | $784,653.23 |
| 12/1/2023 | 16 | ($10,414.97) | ($5,183.95) | ($5,231.02) | $779,469.28 |
| 1/1/2024 | 17 | ($10,414.97) | ($5,218.51) | ($5,196.46) | $774,250.77 |
| 2/1/2024 | 18 | ($10,414.97) | ($5,253.30) | ($5,161.67) | $768,997.47 |
| 3/1/2024 | 19 | ($10,414.97) | ($5,288.32) | ($5,126.65) | $763,709.14 |
| 4/1/2024 | 20 | ($10,414.97) | ($5,323.58) | ($5,091.39) | $758,385.57 |
| 5/1/2024 | 21 | ($10,414.97) | ($5,359.07) | ($5,055.90) | $753,026.50 |
| 6/1/2024 | 22 | ($10,414.97) | ($5,394.80) | ($5,020.18) | $747,631.70 |
| 7/1/2024 | 23 | ($10,414.97) | ($5,430.76) | ($4,984.21) | $742,200.94 |
| 8/1/2024 | 24 | ($10,414.97) | ($5,466.97) | ($4,948.01) | $736,733.98 |
| 9/1/2024 | 25 | ($10,414.97) | ($5,503.41) | ($4,911.56) | $731,230.56 |
| 10/1/2024 | 26 | ($10,414.97) | ($5,540.10) | ($4,874.87) | $725,690.46 |
| 11/1/2024 | 27 | ($10,414.97) | ($5,577.04) | ($4,837.94) | $720,113.43 |
| 12/1/2024 | 28 | ($10,414.97) | ($5,614.22) | ($4,800.76) | $714,499.21 |
| 1/1/2025 | 29 | ($10,414.97) | ($5,651.64) | ($4,763.33) | $708,847.57 |
| 2/1/2025 | 30 | ($10,414.97) | ($5,689.32) | ($4,725.65) | $703,158.25 |
| 3/1/2025 | 31 | ($10,414.97) | ($5,727.25) | ($4,687.72) | $697,431.00 |
| 4/1/2025 | 32 | ($10,414.97) | ($5,765.43) | ($4,649.54) | $691,665.56 |
| 5/1/2025 | 33 | ($10,414.97) | ($5,803.87) | ($4,611.10) | $685,861.70 |
| 6/1/2025 | 34 | ($10,414.97) | ($5,842.56) | ($4,572.41) | $680,019.13 |
| 7/1/2025 | 35 | ($10,414.97) | ($5,881.51) | ($4,533.46) | $674,137.62 |
| 8/1/2025 | 36 | ($10,414.97) | ($5,920.72) | ($4,494.25) | $668,216.90 |
| 9/1/2025 | 37 | ($10,414.97) | ($5,960.19) | ($4,454.78) | $662,256.71 |
| 10/1/2025 | 38 | ($10,414.97) | ($5,999.93) | ($4,415.04) | $656,256.78 |
| 11/1/2025 | 39 | ($10,414.97) | ($6,039.93) | ($4,375.05) | $650,216.86 |
| 12/1/2025 | 40 | ($10,414.97) | ($6,080.19) | ($4,334.78) | $644,136.66 |
| 1/1/2026 | 41 | ($10,414.97) | ($6,120.73) | ($4,294.24) | $638,015.94 |
| 2/1/2026 | 42 | ($10,414.97) | ($6,161.53) | ($4,253.44) | $631,854.40 |
| 3/1/2026 | 43 | ($10,414.97) | ($6,202.61) | ($4,212.36) | $625,651.79 |

Exhibit F- 800K Note

| Payment Date | Payment Number | Payment | Principal | Interest | Balance |
| --- | --- | --- | --- | --- | --- |
| 4/1/2026 | 44 | ($10,414.97) | ($6,243.96) | ($4,171.01) | $619,407.83 |
| 5/1/2026 | 45 | ($10,414.97) | ($6,285.59) | ($4,129.39) | $613,122.25 |
| 6/1/2026 | 46 | ($10,414.97) | ($6,327.49) | ($4,087.48) | $606,794.76 |
| 7/1/2026 | 47 | ($10,414.97) | ($6,369.67) | ($4,045.30) | $600,425.08 |
| 8/1/2026 | 48 | ($10,414.97) | ($6,412.14) | ($4,002.83) | $594,012.95 |
| 9/1/2026 | 49 | ($10,414.97) | ($6,454.89) | ($3,960.09) | $587,558.06 |
| 10/1/2026 | 50 | ($10,414.97) | ($6,497.92) | ($3,917.05) | $581,060.14 |
| 11/1/2026 | 51 | ($10,414.97) | ($6,541.24) | ($3,873.73) | $574,518.90 |
| 12/1/2026 | 52 | ($10,414.97) | ($6,584.85) | ($3,830.13) | $567,934.06 |
| 1/1/2027 | 53 | ($10,414.97) | ($6,628.74) | ($3,786.23) | $561,305.31 |
| 2/1/2027 | 54 | ($10,414.97) | ($6,672.94) | ($3,742.04) | $554,632.38 |
| 3/1/2027 | 55 | ($10,414.97) | ($6,717.42) | ($3,697.55) | $547,914.95 |
| 4/1/2027 | 56 | ($10,414.97) | ($6,762.21) | ($3,652.77) | $541,152.75 |
| 5/1/2027 | 57 | ($10,414.97) | ($6,807.29) | ($3,607.68) | $534,345.46 |
| 6/1/2027 | 58 | ($10,414.97) | ($6,852.67) | ($3,562.30) | $527,492.79 |
| 7/1/2027 | 59 | ($10,414.97) | ($6,898.35) | ($3,516.62) | $520,594.44 |
| 8/1/2027 | 60 | ($10,414.97) | ($6,944.34) | ($3,470.63) | $513,650.10 |
| 9/1/2027 | 61 | ($10,414.97) | ($6,990.64) | ($3,424.33) | $506,659.46 |
| 10/1/2027 | 62 | ($10,414.97) | ($7,037.24) | ($3,377.73) | $499,622.22 |
| 11/1/2027 | 63 | ($10,414.97) | ($7,084.16) | ($3,330.81) | $492,538.06 |
| 12/1/2027 | 64 | ($10,414.97) | ($7,131.38) | ($3,283.59) | $485,406.68 |
| 1/1/2028 | 65 | ($10,414.97) | ($7,178.93) | ($3,236.04) | $478,227.75 |
| 2/1/2028 | 66 | ($10,414.97) | ($7,226.79) | ($3,188.18) | $471,000.96 |
| 3/1/2028 | 67 | ($10,414.97) | ($7,274.97) | ($3,140.01) | $463,726.00 |
| 4/1/2028 | 68 | ($10,414.97) | ($7,323.47) | ($3,091.51) | $456,402.53 |
| 5/1/2028 | 69 | ($10,414.97) | ($7,372.29) | ($3,042.68) | $449,030.24 |
| 6/1/2028 | 70 | ($10,414.97) | ($7,421.44) | ($2,993.53) | $441,608.81 |
| 7/1/2028 | 71 | ($10,414.97) | ($7,470.91) | ($2,944.06) | $434,137.89 |
| 8/1/2028 | 72 | ($10,414.97) | ($7,520.72) | ($2,894.25) | $426,617.17 |
| 9/1/2028 | 73 | ($10,414.97) | ($7,570.86) | ($2,844.11) | $419,046.32 |
| 10/1/2028 | 74 | ($10,414.97) | ($7,621.33) | ($2,793.64) | $411,424.99 |
| 11/1/2028 | 75 | ($10,414.97) | ($7,672.14) | ($2,742.83) | $403,752.85 |
| 12/1/2028 | 76 | ($10,414.97) | ($7,723.29) | ($2,691.69) | $396,029.56 |
| 1/1/2029 | 77 | ($10,414.97) | ($7,774.77) | ($2,640.20) | $388,254.79 |
| 2/1/2029 | 78 | ($10,414.97) | ($7,826.61) | ($2,588.37) | $380,428.18 |
| 3/1/2029 | 79 | ($10,414.97) | ($7,878.78) | ($2,536.19) | $372,549.40 |
| 4/1/2029 | 80 | ($10,414.97) | ($7,931.31) | ($2,483.66) | $364,618.09 |
| 5/1/2029 | 81 | ($10,414.97) | ($7,984.18) | ($2,430.79) | $356,633.90 |
| 6/1/2029 | 82 | ($10,414.97) | ($8,037.41) | ($2,377.56) | $348,596.49 |
| 7/1/2029 | 83 | ($10,414.97) | ($8,091.00) | ($2,323.98) | $340,505.49 |
| 8/1/2029 | 84 | ($10,414.97) | ($8,144.94) | ($2,270.04) | $332,360.56 |
| 9/1/2029 | 85 | ($10,414.97) | ($8,199.23) | ($2,215.74) | $324,161.32 |
| 10/1/2029 | 86 | ($10,414.97) | ($8,253.90) | ($2,161.08) | $315,907.43 |
| 11/1/2029 | 87 | ($10,414.97) | ($8,308.92) | ($2,106.05) | $307,598.50 |
| 12/1/2029 | 88 | ($10,414.97) | ($8,364.32) | ($2,050.66) | $299,234.19 |
| 1/1/2030 | 89 | ($10,414.97) | ($8,420.08) | ($1,994.89) | $290,814.11 |

Exhibit F- 800K Note

| Payment Date | Payment Number | Payment | Principal | Interest | Balance |
| --- | --- | --- | --- | --- | --- |
| 2/1/2030 | 90 | ($10,414.97) | ($8,476.21) | ($1,938.76) | $282,337.90 |
| 3/1/2030 | 91 | ($10,414.97) | ($8,532.72) | ($1,882.25) | $273,805.18 |
| 4/1/2030 | 92 | ($10,414.97) | ($8,589.60) | ($1,825.37) | $265,215.58 |
| 5/1/2030 | 93 | ($10,414.97) | ($8,646.87) | ($1,768.10) | $256,568.71 |
| 6/1/2030 | 94 | ($10,414.97) | ($8,704.51) | ($1,710.46) | $247,864.20 |
| 7/1/2030 | 95 | ($10,414.97) | ($8,762.54) | ($1,652.43) | $239,101.65 |
| 8/1/2030 | 96 | ($10,414.97) | ($8,820.96) | ($1,594.01) | $230,280.69 |
| 9/1/2030 | 97 | ($10,414.97) | ($8,879.77) | ($1,535.20) | $221,400.92 |
| 10/1/2030 | 98 | ($10,414.97) | ($8,938.97) | ($1,476.01) | $212,461.96 |
| 11/1/2030 | 99 | ($10,414.97) | ($8,998.56) | ($1,416.41) | $203,463.40 |
| 12/1/2030 | 100 | ($10,414.97) | ($9,058.55) | ($1,356.42) | $194,404.85 |
| 1/1/2031 | 101 | ($10,414.97) | ($9,118.94) | ($1,296.03) | $185,285.91 |
| 2/1/2031 | 102 | ($10,414.97) | ($9,179.73) | ($1,235.24) | $176,106.18 |
| 3/1/2031 | 103 | ($10,414.97) | ($9,240.93) | ($1,174.04) | $166,865.25 |
| 4/1/2031 | 104 | ($10,414.97) | ($9,302.54) | ($1,112.43) | $157,562.71 |
| 5/1/2031 | 105 | ($10,414.97) | ($9,364.55) | ($1,050.42) | $148,198.16 |
| 6/1/2031 | 106 | ($10,414.97) | ($9,426.98) | ($987.99) | $138,771.17 |
| 7/1/2031 | 107 | ($10,414.97) | ($9,489.83) | ($925.14) | $129,281.34 |
| 8/1/2031 | 108 | ($10,414.97) | ($9,553.10) | ($861.88) | $119,728.24 |
| 9/1/2031 | 109 | ($10,414.97) | ($9,616.78) | ($798.19) | $110,111.46 |
| 10/1/2031 | 110 | ($10,414.97) | ($9,680.90) | ($734.08) | $100,430.57 |
| 11/1/2031 | 111 | ($10,414.97) | ($9,745.43) | ($669.54) | $90,685.13 |
| 12/1/2031 | 112 | ($10,414.97) | ($9,810.40) | ($604.57) | $80,874.73 |
| 1/1/2032 | 113 | ($10,414.97) | ($9,875.81) | ($539.16) | $70,998.92 |
| 2/1/2032 | 114 | ($10,414.97) | ($9,941.65) | ($473.33) | $61,057.27 |
| 3/1/2032 | 115 | ($10,414.97) | ($10,007.92) | ($407.05) | $51,049.35 |
| 4/1/2032 | 116 | ($10,414.97) | ($10,074.64) | ($340.33) | $40,974.71 |
| 5/1/2032 | 117 | ($10,414.97) | ($10,141.81) | ($273.16) | $30,832.90 |
| 6/1/2032 | 118 | ($10,414.97) | ($10,209.42) | ($205.55) | $20,623.48 |
| 7/1/2032 | 119 | ($10,414.97) | ($10,277.48) | ($137.49) | $10,346.00 |
| 8/1/2032 | 120 | ($10,414.97) | ($10,346.00) | ($68.97) | $0.00 |

Exhibit F- 800K Note